W. J. SPRINKLE *et al vs.* E. NYE HUTCHINSON *et al.*

1. Proceedings to effect a settlement of an estate against an executor must be commenced before the Probate Court.

2. If in the course of the proceedings, injunctive relief is desired application must be made to a Judge of the Superior Court.

3. Whether on a clear case for an injunction made by the complaint, this Court · would force a plaintiff by dismissing his action to begin *de novo* in the Probate Court, discussed but deemed unnecessary to be decided, as the Court does not consider such a case made by the complaint.

4. A complaint which alleges that an executor had power to sell land under the will, and sold for Confederate money, received it and is about to make the purchaser a title; that the executor is insolvent and is wasting the assets, but does not charge collusion with the purchaser—does not present a case entitling the plaintiff to injunctive relief.

The cases of *Hunt* v. *Sneed*, 64 N. C. 176, and *Finger* v. *Finger* 64 N. C. 183, cited and approved.

This was a civil action heard on motion to vacate an order of injunction, and to dismiss the action, heard before His Honor Judge Moore, at the July Special Term, 1871, of Mecklenburg Superior Court.

The facts are sufficiently stated in the opinion of the Court, to a proper understanding of the points determined.

His Honor granted the motion to vacate, and denied the motion to dismiss, from which ruling the defendants appealed.

*Jones & Johnston* for plaintiff.
*J. H. Wilson* and *W. H. Bailey* for defendants.

Rodman, J. This action began by summons returnable before the Judge of the Superior Court of Mecklenburg in term time.

The plaintiff complained :

1. That one Holton died in 1860, leaving a will which was duly proved, and that the defendant qualified as executor.

2. That the testator was seized and possessed of valuable real and personal estate, which went into the possession of the executor.

3. By his will, the testator devised all his real and personal estate to his executor in trust to, pay his debts, and then to divide the same among his heirs, with power to sell any portion of the estate privately or publicly in his discretion.

4. The plaintiffs are the heirs and distributes of the testator.

5. That on the 13th of October, 1863, the executor sold several valuable lots and notes at six months to divers persons, some of whom complied with the terms by giving notes, and others did not ; none have paid, and the prices were very inadequate.   In the Spring of 1864, however, he did receive Confederate money from one of the purchasers, and conveyed to him the land he had bought.

6. That the executor has misapplied the funds of the estate, and is insolvent.

7. That the widow dissented, and had dower assigned to her.

The plaintiff prays that the executor be enjoined from receiving payment for the lands sold, and from making deeds therefor, and for an account, and the appointment of a receiver, &c.

It is unnecessary to state the answer, except that defendant admits that he is executor, and has received certain goods and lands of his testator, and that he is liable to an account.

An injunction was issued as prayed for, a motion was made to vacate the same, and also a motion to dismiss the bill for want of jurisdiction ; the Judge allowed the first, but refused second, whereupon the defendant appealed.

This case is governed by *Hunt* v. *Sneed*, 64 N. C., 176.

In that case it is said that the Clerk as Probate Judge has original jurisdiction of all proceedings for the settlement of the estates of deceased persons. Const., Art. IV, sec. 17, and Act of 1868'–69, ch. 113.

The case of *Finger* v. *Finger*, 64 N. C., 183, does not at all conflict with *Hunt* v. *Sneed*. In *Finger* v. *Finger*, it does not appear but that the action was begun before the passage of the Act of 1868–'69. Probably it was. But if it was not so, the two cases are distinguished by the difference in the objects of the actions, and the nature of the relief sought. In the latter case, the administrator had procured from the county court, an order for the sale of land in a proceeding to which some the heirs had not been made parties, and when he had or ought to have had sufficient personal property to pay the debts. The bill was by the heirs, and prayed for an injunction against the sale until an account should be taken, which was allowed, and an account taken in that Court. The account and settlement of the estate, was not the primary object of the action, and came in only as incidental to the main relief—the injunction, which the Probate Court could not grant. Here, as in *Hunt* v. *Sneed*, the primary object is an account and settlement of the estate, and as incidental thereto, an injunction is asked for, to restrain the executor from completing the sales of the land which he has made fraudulently as is alleged. In *Hunt* v. *Sneed*, it is said: "In every case in which the Court of Probate can give an adequate remedy, the party seeking it must apply to that Court."

Without copying the whole passage referred to, it proceeds in substance to say that if any part of the relief sought, consists of an injunction which the Probate Court cannot order, the party needing it may apply to the Judge of the Superior Court. Such an order would not oust the jurisdiction of the Probate Judge; the action for the account would still proceed before him, and according to the judgment given by him, either party might apply to the Judge of the Superior Court

to vacate, continue, or modify the injunction. This rule seemed to us to be the only one which would not lead to the inconvenience of either taking entirely away from the Probate Court its peculiar jurisdiction over the accounts of executors, &c., or else of having parts of the same settlement in two courts at the same time, whereas it is not seen that any inconvenience is likely to arise from giving the Probate Court exclusive original jurisdiction over the account with leave to any party to apply to the Judge of the Superior Court for any order necessary to make the relief complete, which is beyond the power of the Probate Court. And this is more evident than before, since by recent legislation no court but the Probate Court can audit the account of an executor, at the instance of a creditor, or while debts remain unpaid. The only question in the present case not covered by the decision, in *Hunt* v. *Sneed*, seems to be this.

Considering that a part of the relief prayed for in this case (the injunction) is beyond the power of the Probate Court, and might be granted for sufficient reasons upon the commencement of an action for an account; whether the Superior Court instead of dismissing the bill and turning the plaintiffs over to begin in the Probate Court, and then come to the Superior Court for the injunction, could not take cognizance of the action so far as to grant the injunction and order the plaintiffs to bring their action for an acccount in the Probate Court. The only objection which occurs to us as making against this course is, that it makes the application for the incidental relief precede the primary one. And certainly the appearance of the proceedings would be more orderly and symmetrical by beginning in the Probate Court. But for the sake of this orderly appearance, are we compelled to dismiss the present action, when every end of justice can be attained by another course? If it be said that the defendants ought not to be exposed to the risk of costs in two independent actions when one alone would suffice; the answer is, the cost of the applica-

tion for the injunction are entirely in the control of the Judge of the Superior Court, who will take care to see that the defendant shall not in any event be made to pay any additional costs by reason of the plaintiffs inversion of the regular order of proceeding.    We are inclined to think therefore that if a case for the continuance of the injunction had been made out, it would have been for the Judge to have continued it and to have directed the plaintiffs to proceed by an action in the Probate Court for an accout.    If the action in *Finger* v. *Finger* was brought after the Act of 1868–'69, this should probably been the course taken there.    But it is not necessary to decide this question because in the present case the Judge thought there was no ground for the injunction, and we agree with him.

It is charged that in 1863, the executor sold a lot to Davidson and took his note for the price payable in confederate money, but made no present conveyance to him, and that he is now about to make a conveyance for a much less sum : much less than the real value of the land, and that the executor is insolvent.    Assuming all this to be true, it would not justifiy an injunction, which if perpetuated would in effect amount to a rescision of the contract for sale with Davidson.    The executor had power to sell under the will; it may be that he acted wrongfully in making the sale in 1863, and that he is personally liable ; but it is not charged that Davidson was in collusion with him or was privy to any fraud ; and he is not bound to see to the application of the purchase money.    If by reason of the insolvency of the executor there will be risk in his receiving the purchase money, relief against that can be had in the Probate Court.    By the Acts of 1866–'67, and the rules established by the decisions of this Court in relation to contracts payable in Confederate money, the Executor is entitled to recover of Davidson the value of the lot, and is chargeable with that value in the statement of his account.    The plaintiffs can have full relief in the Probate Court, and their action should have been dismissed.

Per Curiam.                                Bill dismissed.